UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KENDALE L. ADAMS, MARTA E. BELL, VINCENT C. BURKE, RUSSELL BURNS, BROWNIE COLEMAN, JR., ANTHONY W. FINNELL, JOHN T. GREEN, CURTIS HANKS, DERRICK L. HARRIS, TIMOTHY A. KNIGHT, YOLANDA R. MADDREY, RONALD L. MILLS, KENDALL J. MOORE, ARTHUR C. ROWLEY, MATTHEW STEWARD, JEFFREY C. TAYLOR, JOHN H. WALTON, JR., LEETTA I. WHITE, IDA D. WILLIAMS, and KIMBERLY JOINTER YOUNG,<br><br>                Plaintiffs,<br><br>vs.<br><br>CITY OF INDIANAPOLIS,<br><br>                Defendant. | No. 1:12-cv-01806-SEB-DML |

**ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS**

This cause is before the Court on the Partial Motion to Dismiss [docket no. 10] filed by Defendant City of Indianapolis ("City"), on February 15, 2013, pursuant to Fed. R. Civ. Pro. 12(b)(6). In their Complaint, Kendale L. Adams, Marta E. Bell, Vincent C. Burke, Russell Burns, Brownie Coleman, Jr., Anthony W. Finnell, John T. Green, Curtis Hanks, Derrick L. Harris, Timothy A. Knight, Yolanda R. Maddrey, Ronald L. Mills, Kendall J. Moore, Arthur C. Rowley, Matthew Steward, Jeffrey C. Taylor, John H.

1

Walton, Jr., Leetta I. White, Ida D. Williams, and Kimberly Jointer Young ("Plaintiffs"), allege that the City discriminated against them under the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution, 42 U.S.C. §§ 2000e, *et. seq.* ("Title VII"), 42 U.S.C. § 1983, 42 U.S.C. § 1981, and the Indiana Constitution; Plaintiff Green also alleges retaliation for his participation in this litigation. For the reasons detailed below, we GRANT Defendant's Partial Motion to Dismiss.

## FACTUAL BACKGROUND

The case before us arises out of various allegedly discriminatory promotions made during 2010 and 2011 by the Indianapolis Metropolitan Police Department based on rankings compiled in 2008 ("the promotions list"), which were purported to objectively identify and rank the qualifications of each individual police officer candidate seeking an advancement or promotion. All Plaintiffs were officers employed by the Indianapolis Metropolitan Police Department ("IMPD") during the time in question, from 2008 to 2011. Compl. at 1-2, Ex. 1, ¶ 1. The IMPD has a system of personnel advancement that includes three scored portions—an oral examination, a written examination, and a candidate profile—which are then combined to create a composite score for each candidate. Id. at 4, Ex. 1, ¶ 18. The composite scores for each candidate are then placed on a ranked candidate list that is sorted from the highest-scoring officer for any given test to the lowest-scoring. Pl.'s Resp. to Mot. Dismiss at 2. These ranked lists form the basis for merit rank promotions of officers from patrolmen to sergeants, sergeants to lieutenants, and lieutenants to captains. Id. Plaintiffs generally allege that the City has

allowed the "manipulation of the promotion process" which creates a lack of consistency and predictability in the promotion system. Id. at 3.

Group I, comprised of Plaintiffs Adams, Bell, Green, Harris, Maddrey, Mills, Moore, Rowley, and Williams, held the merit rank of patrolmen from 2008 through 2011, and all are African-American. Id. at 3, Ex. 1, ¶¶ 8-9. Group I alleges, among other things, that the oral examination portion of the promotion process is scored in such a fashion as to meet preferential goals, which have a "substantially adverse impact on African-American … candidates" eligible for promotion. Id. at 6, Ex. 1, ¶¶ 29-31. While the promotion processes appear to be superficially race neutral, the Group I Plaintiffs allege that substantively, "the results after promotions do have a negative and unacceptably disproportiona[te] impact on African-American and Latino candidates." Id. at 7, Ex. 1, ¶¶ 37. The Group I Plaintiffs claim violations of: (1) Equal Protection under the 14th Amendment; (2) disparate impact under Title VII; (3) disparate treatment under Title VII; (4) violations of Indianapolis Codes § 581-403 and § 581-103; and (5) Plaintiff Green also alleges retaliation for his participation in this litigation. Id. at 45-48, Ex. 1, ¶¶ 278-299.

Group II, comprised of Plaintiffs Burke, Burns, Finnell, Hanks, Knight, Steward, Taylor, White, and Young, held the merit rank of sergeant from 2008 through 2011, and all are African-American. Id. at 17-18, Ex. 1, ¶¶ 106-107. Group II's allegations are substantially the same as Group I's allegations, namely, that the promotion processes are discriminatory in that they "disproportionally and substantially adversely impact African-American candidates and the Group II Plaintiffs by failing to promote them to merit rank

positions sought in proportional numbers when their qualifications are substantially equal to their promoted Caucasian counterparts." Id. at 23, Ex. 1, ¶ 143. The Group II Plaintiffs claim violations of: (1) Equal Protection under the 14th Amendment; (2) disparate impact under Title VII; (3) disparate treatment under Title VII; and (4) violations of Indianapolis Codes § 581-403 and § 581-103. Id. at 49-52, Ex. 1, ¶¶ 300-315.

Group III, comprised of Plaintiffs Coleman and Walton, held the merit rank of lieutenant from 2008 through 2011 and both are African-American. Id. at 31, Ex. 1, ¶¶ 194-195. Group III's allegations are identical to Group II's allegations, namely, that the promotion processes are disproportionately advantageous to Caucasian applicants for promotion. Id. at 32-44, Ex. 1, ¶¶ 200-273. The Group III Plaintiffs claim violations of: (1) Equal Protection under the 14th Amendment; (2) disparate impact under Title VII; (3) disparate treatment under Title VII; and (4) violations of Indianapolis Codes § 581-403 and § 581-103. Id. at 49-52, Ex. 1, ¶¶ 300-315.

## PROCEDURAL HISTORY

Prior to the filing of the case now before us, a group of Plaintiffs, twenty of whom appear as Plaintiffs here as well, filed a similar discrimination lawsuit against the City. On January 30, 2009, those Plaintiffs filed a Complaint for Damages in the Marion Superior Court against the City and Mayor Greg Ballard, alleging, in part, that the City

discriminated against them based on the basis of race.[1]  For purposes of clarity, we refer to this prior litigation as Lawsuit I.  On February 17, 2009, the City removed Lawsuit I to this Court.

On August 10, 2009, Plaintiffs filed their first Motion for Leave to Amend Complaint [dkt. no. 23],[2] which the Court granted.  The complaint was amended to include thirty-six individual Plaintiffs[3] and three Defendants, including the City, under five race discrimination claims:  (1) Title VII disparate impact; (2) Title VII disparate treatment; (3) 42 U.S.C. § 1983; (4) 42 U.S.C. § 1981; and (5) the Indiana Constitution. Dkt. No. 44;[4] Def.'s Mot Dismiss at 4-5.

On September 16, 2010, we granted the City partial judgment on the pleadings, including dismissal of the following claims:  (1) All claims by the NAACP due to lack of standing; (2) all state constitutional claims for damages due to Plaintiffs' failure to state a cognizable right of action; (3) all claims under § 1981 due to the fact that § 1983 remains the sole avenue of relief against state actors for alleged violations of § 1981; (4) all disparate impact claims under § 1983 due to the fact that there is no such self-standing relief under § 1983; (5) all disparate impact claims under Title VII for failure to exhaust administrative remedies, assert disparate impact claims, or state a claim upon which relief could have been granted; (6) all claims against Mayor Ballard and Chief Spears for failure to state any claim upon which relief could have been granted; (7) Plaintiff Danny

---

[1] The first discrimination cause of action (1:09-cv-0175-SEB-DML) was brought under the Equal Protection Clause of the Fourteenth Amendment, Title VII, 42 U.S.C. § 1983, 42 U.S.C. § 1981, and the Indiana Constitution.  Def.'s Mot. Dismiss at 1.
[2] This document may be found in the Lawsuit I docket, under related case no. 1:09-cv-00175-SEB-DML.
[3] Twenty of the Plaintiffs named in Lawsuit I are also named in Lawsuit II.
[4] This document may be found in the Lawsuit I docket, under related case no. 1:09-cv-00175-SEB-DML.

5

Case 1:12-cv-01806-SEB-DML Document 35 Filed 09/30/13 Page 6 of 18 PageID #: 230

Anderson's hostile work environment claim for failure to state a claim upon which relief could have been granted; and (8) the Title VII disparate treatment claims by Plaintiffs Grissom, Young, Rowley, Moore, Bell, Williams, and Mills. Dkt. No. 135.[5]

On October 12, 2010, Plaintiffs filed their second Motion for Leave to File Amended Complaint [dkt. no. 143],[6] asking to bring in claims: (1) under § 1983 and Title VII for disparate impact; (2) under § 1981; and (3) for hostile work environment brought by Plaintiff Anderson. Id. On October 15, 2010, Plaintiffs filed a Motion to Alter or Amend Judgment [dkt. no. 144],[7] asking the Court to reconsider its Order on the Motion for Partial Judgment on the Pleadings [dkt. no. 135],[8] and permit the Plaintiffs to pursue all of the claims that were dismissed in that Order. On May 6, 2011, the Court denied the aforementioned motions based on Plaintiffs' failure to adduce new evidence in support of those claims or to establish a manifest error of law or fact that infused the Court's prior decision. Dkt. No. 159.[9]

On June 27, 2011, the City filed a Motion for Summary Judgment. Dkt. No. 164.[10] On March 14, 2012, this Court entered its ruling granting, in its entirety, Defendant's Motion for Summary Judgment, based on Plaintiffs':

> (1) Waiver of the following claims for failure to present any issues of material fact supported by pertinent legal authority: Plaintiffs' race discrimination claims relating to the administration of their pension plan; Plaintiff Finnell's

---

[5] Id.
[6] Id.
[7] Id.
[8] Id.
[9] Id.
[10] Id.

>discrimination claims brought pursuant to Title VII and § 1983; Plaintiff Walton's ADEA claim; and Plaintiffs' state constitutional claims for injunctive relief; and
>
>(2) Failure to put forth a cogent argument that addressed their conformity to the applicable statutes of limitations for claims brought pursuant to § 1983 or within the EEOC administrative guidelines. Dkt. No. 190 at 12.[11]

Plaintiffs in Lawsuit I have appealed our summary judgment ruling, and their appeal remains pending before the Seventh Circuit.[12]

In Lawsuit II, the EEOC issued its right to sue notice on August 31, 2012 (Compl. at 17, Ex. 1, ¶ 94), and Plaintiffs filed their second complaint which was removed to this court on December 11, 2012. Pl.'s Resp. to Def.'s Mot. Dismiss at 3.

Now before us is the City's motion for partial dismissal of the claims in Lawsuit II. It's motion filed pursuant to Rule 12(b)(6), Fed.R.Civ.P., asserts that these recent claims mirror the prior adjudicated claims and thus are barred by *res judicata* and that others of the new claims have been waived and/or exhausted by the required administrative review process. We discuss each of these arguments below.

---

[11] Id.

[12] The Seventh Circuit appeal (app. no. 12-1874) has been briefed and oral arguments have been made (October 1, 2012); as of the date of this written order, the Court of Appeals has not yet rendered an opinion. The appeal addresses the several orders on the Lawsuit I docket (1:09-cv-0175-SEB-DML): Order on Motion for Partial Judgment on the Pleadings (September 16, 2010), Order on Pending Motions (May 6, 2011), Order Granting Defendant's Motion for Summary Judgment (March 14, 2012), and Final Judgment (March 13, 2012).

## ANALYSIS

### A. *Res Judicata* and Claim Preclusion

The City argues that Plaintiffs' claims under the Fourteenth Amendment, Title VII, 42 U.S.C. § 1983, 42 U.S.C. § 1981, and the Indiana Constitution are barred by *res judicata* and collateral estoppel. The Plaintiffs, according to the City, have previously argued the claims they are advancing here, receiving a "final judgment on the merits in a court of competent jurisdiction [which therefore] bars the same parties or their privies from relitigating not only the issues which were in fact raised and decided but also all other issues which could have been raised in the prior action." Lee v. City of Peoria, 685 F.2d 196, 199 (7th Cir. 1982) (citing Cromwell v. County of Sac., 94 U.S. 351 (1877); Morris v. Union Oil Co. of Calif., 421 N.E.2d 278 (Il. Ct. App. 1981)). "The general rule of *res judicata* applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations." C.I.R. v. Sunnen, 333 U.S. 591, 597 (1948).

"The principle underlying *res judicata*—or claim preclusion—is to minimize 'the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions.'" Matrix IV, Inc. v. Am. Nat. Bank & Trust Co. of Chicago, 649 F.3d 539, 547 (7th Cir. 2011) citing Montana v. United States, 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). To establish the existence of claim preclusion three elements must be present: "(1) the same parties; (2) a dispute arising from the same transaction; and (3) a final judgment on the merits. Todd v. Kohl's Dep't Store, 490 F. App'x 824 (7th Cir.

2013) citing Matrix, 649 F.3d 539, 547; *see also* Czarniecki v. City of Chi., 633 F.3d 545, 548 (7th Cir.2011). Since the twenty litigants in Lawsuit II form a subset of the Lawsuit I Plaintiffs and neither party disputes this, we will focus our discussion on the two other elements of claim preclusion.

**Final Judgment:** While Plaintiffs argue that the Lawsuit I claims which were dismissed at the pleading stage[13] were never decided on the merits (Pl.'s Resp. at 7-8), the law is clear: "A dismissal for failure to state a claim upon which relief can be granted … is a dismissal on the merits and is [subject to] *res judicata.*" Bunker Ramo Corp. v. United Bus. Forms, Inc., 713 F.2d 1272, 1277 (7th Cir. 1983) citing Federated Department Stores, Inc., 452 U.S. at 399 n. 3, 101 S.Ct. at 2428 n. 3. (distinguishing between dismissal for lack of subject matter jurisdiction and dismissal on substantive issues.) Further, while "the legal standards are identical, unlike a motion to dismiss, a motion for judgment on the pleadings is a motion for final judgment in favor of the moving party." Ball v. City of Indianapolis, 2013 WL 1221936, *2 n. 4 (S.D. Ind., March 25, 2013). ("Both the summary judgment procedure and the motion for judgment on the pleadings are concerned with the substance of the parties' claims and defenses and are directed toward a final judgment on the merits."). *See also* Collins v. Bolton, 287 F.Supp. 393, 396 (D.C.Ill.1968) ("It is settled that a motion for a judgment on the pleadings is a

---

[13] The claims at issue in this inquiry include those claims for which a partial judgment on the pleadings was granted in Lawsuit I and which are also pleaded in Lawsuit II: (1) all state constitutional claims for damages; (2) all claims under § 1981; (3) all disparate impact claims under § 1983 and Title VII; and (5) Title VII disparate treatment claims by Plaintiffs Young, Rowley, Moore, Bell, Williams, and Mills. Dkt. No. 135. The claims included under the order granting summary judgment to the Defendants in Lawsuit I are not raised by Plaintiffs, therefore they are found to be waived and not addressed herein. Lawsuit I, Dkt. No. 190.

motion for a judgment on the merits."). We therefore reject Plaintiffs' contention that their claims which were dismissed at the pleading stage were never considered on the merits.

Plaintiffs simultaneously argue that the merits were not decided because they should have been afforded a second opportunity to amend their Lawsuit I complaint in October 2010. However, "leave to amend is discretionary" and will be reversed "only for an abuse of that discretion." Wakeen v. Hoffman House, Inc., 724 F.2d 1238, 1244 (7th Cir. 1983), citing United States Labor Party v. Oremus, 619 F.2d 683, 692 (7th Cir.1980). "It is not an abuse of discretion to refuse a request to amend when the proffered amendment merely restates the same facts using different language, or reasserts a claim previously determined." Id., citing Kasey v. Molybdenum Corporation of America, 467 F.2d 1284, 1285 (9th Cir.), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 571, 34 L.Ed.2d 516 (1972). The Court offered Plaintiffs ample opportunity for amendment by granting their first amendment request on November 02, 2009. Dkt. No. 44.[14] According to the case management plan, Plaintiffs were subsequently afforded an opportunity to amend their complaint until March 3, 2010. Pl.'s Resp. Mot. Dismiss at 7.

Plaintiffs chose to submit a request for amendment only after the Court ruled on the Defendant's Motion for Judgment on the Pleadings, several months later in September 2010. Dkt. No. 135.[15] The second request was comprised of two motions— both of which were denied—the first, for having failed to satisfy the requirements for an

---

[14] This document may be found in the Lawsuit I docket, under related case no. 1:09-cv-00175-SEB-DML.
[15] Id.

10

amendment of a complaint under Fed. R. Civ. Pro. 15(a)(2) and the second for having failed to satisfy the requirements for an amendment of a judgment under Fed. R. Civ. Pro. 59(e).

Plaintiffs' reliance on Bausch, in which no leave for amendment was allowed, does little to advance their case.[16] Bausch v. Stryker Corp., 630 F.3d 546, 562 (7th Cir. 2010) citing Foster v. DeLuca, 545 F.3d 582, 584 (7th Cir. 2008) ("[d]istrict courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend her complaint."). Nevertheless, Plaintiffs' request for amendment should not provide a "'vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment.'" United States v. Resnick, 594 F.3d 562, 568 (7th Cir. 2010) (quoting Bordelon v. Chicago School Reform Bd. of Trustees, 233 F.3d 524, 529 (7th Cir. 2000)).

Thus, the Court rejects Plaintiffs' contention that no final judgment was made with regard to those claims decided at the pleading stage. Next, we turn to the issue of whether the claims presented in Lawsuit II are close in identity to those litigated in Lawsuit I.

---

[16] Further, Plaintiffs generally cite Vance, which was vacated October 28, 2011. It is unclear from their reference, which portion of the case is relevant to their circumstances. Vance v. Rumsfeld, 653 F.3d 591, 608 (7th Cir. 2011), reh'g en banc granted, opinion vacated (Oct. 28, 2011), on reh'g en banc, 701 F.3d 193 (7th Cir. 2012) cert. denied, 133 S. Ct. 2796 (U.S. 2013).

**Identity of claims:** The second element of claim preclusion is determined by assessing whether the sequential claims arise from the same set of facts. This "transactional inquiry" looks to the facts and circumstances surrounding the claims to determine whether the two are essentially the same. "Even if the two claims are based on different legal theories, the 'two claims are one for purposes of *res judicata* if they are based on the same, or nearly the same, factual allegations.'" Matrix, 649 F.3d 539, 547 citing Herrmann v. Cencom Cable Assocs., 999 F.2d 223, 226 (7th Cir.1993).

The City suggests that any disparate impact or disparate treatment claims arising from rank-order promotional assessments in 2004, 2006, and 2008 are precluded by the Lawsuit I decision because the validity of the testing and resulting ranked lists was fully litigated in Lawsuit I; hence, the claims are identical because they are based on the same promotion processes and data. Plaintiffs respond that their claims regarding the 2011 promotions were not ripe at the time of Lawsuit I. Thus, the issue arises here as to whether a scoring process and the resulting promotions eligibility list produced in 2008, which the Court found to be nondiscriminatory in Lawsuit I, can again be challenged based on promotions occurring after those adjudicated in Lawsuit I.

We first turn to Plaintiffs' argument that while the same people are involved, the facts surrounding the rejection of their promotion applications were different. To wit, Plaintiffs propose that new promotions were made from the 2008 list on or about December 27, 2010, February 23, 2011, March 30, 2011, and April 5, 2011, each causing a new claim for relief, citing generally to Lewis. Pl.'s Resp. to Mot. Dismiss at 8-9. The Supreme Court has held that where a plaintiff has not yet asserted his right to sue, he

12

retains a disparate impact right of action for the purposes of identifying "a present violation" which is actionable. Lewis v. City of Chicago, Ill., 560 U.S. 205, 130 S. Ct. 2191, 2198, 176 L. Ed. 2d 967 (2010). (Deciding whether petitioners' charges were a valid basis for a disparate impact claim requires the precise identification of the discriminatory employment practice to determine timing for the purposes of procedural tolling.) In contrast with the case before us, the Lewis plaintiffs did not file a timely charge related to the adoption of the promotion process, so they validly asserted a disparate impact claim by timely challenging their employer's later application of that personnel practice. Id. at 2196–2201. Hence, because Lewis addresses only part of the analysis—the timing of the discriminatory practice in relationship to the claim—it does not address the issue before us: whether the same facts, people, and timing can cause a second, new claim for relief, and therefore is inappropriately cited by the Plaintiffs as dispositive as to claim preclusion.

We next turn to the issue of ripeness as it relates to the identity of the litigants and timing of Lawsuit II. Plaintiffs accept that "it is axiomatic that Title VII Plaintiffs must have first timely filed a charge with the EEOC or approved substitute entity, and that an opportunity for an administrative investigation" must occur in order to file a federal race discrimination lawsuit. Pl.'s Resp. to Mot. Dismiss at 9. However, because the process followed by the City in its IMPD promotions, there was no way, Plaintiffs assert, that they could have known about, let alone enumerated the alleged discrimination that occurred in 2010 or 2011 as a result of an older list created in 2008. Further, Plaintiffs point to the administrative investigation requirement that a charge must be filed first with

13

the appropriate agency or with the EEOC in order to obtain the prerequisite right-to-sue letter. Plaintiffs then conclude that each instance of promotion could lead to a new claim for disparate impact. We are not persuaded by this reasoning. Plaintiffs' analysis fails to take into account that, given the prior litigation, each promotion in the subsequent lawsuit must be analyzed in terms of the identity of the parties involved, the causes of action advanced, and the scope of the final judgment that was entered. Without proper consideration of these factors, Plaintiffs' arguments fall short of the mark.

Plaintiffs next argue that a third factor—the "callous use of a promotion process known to have a racially-based disparate impact may serve as the basis for a Title VIII disparate treatment claim"—distinguishes Lawsuit I from Lawsuit II, generally citing United States v. City of New York, 683 F.Supp.2d 225 (E.D.N.Y. 2010).[17] Pl.'s Resp. to Mot. Dismiss at 13. While claim preclusion in employment law "generally does not bar a subsequent lawsuit for issues that arise after the operative complaint is filed," there must be an employment action that can be separated from the original facts at play in the previous claim. Todd, 490 F. App'x 824, 825, citing Ellis v. CCA of Tenn. LLC, 650 F.3d 640, 652 (7th Cir.2011). Here, however, there is no additional action that is different from the original scoring and promotion process; instead, all facts offered by Plaintiffs point to evidence already considered in Lawsuit I, namely the promotion process and resulting promotion lists that were used periodically beginning in 2004 and continuing up through 2011. The Plaintiffs' argument is unpersuasive and therefore rejected.

---

[17] A case outside the Seventh Circuit and vacated on May 14, 2013.

In conclusion, Plaintiffs have failed to show that a new cause of action is available to them. Their claims in Lawsuit II are a mirror image of those addressed and fully adjudicated in Lawsuit I. As such, they cannot survive Defendant's motion for dismissal as claims upon which relief cannot be granted, pursuant to Rule 12(b)(6), Fed.R.Civ.Proc.

**B. Waiver of Claims**

The City next argues that the Plaintiffs' claims for relief under § 1981 and the Indiana Constitution are barred by their failure to raise and defend these claims in their Resp. to Mot. Dismiss, citing two cases that address failure to set forth genuine issues of material fact at summary judgment. Docket Nos. 10, 16, 22, 26; Bratton v. Roadway Package Sys., 77 F.3d 168, 173 n.1 (7th Cir. 1996); Central States, Southeast & Southwest Areas Pension Fund v. Midwest Motor Express, Inc., 181 F.3d 799, 808 (7th Cir. 1999)("At summary judgment, arguments not developed in any meaningful way are waived").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand the requirements of Fed. R. Civ. Pro. 8 and 12(b)(6). Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

A party moving to dismiss nonetheless bears a weighty burden. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563 (citing Sanjuan v. Am.

Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) ("At [the pleading stage] the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.")). In addressing a Rule 12(b)(6) motion, we treat all well-pleaded factual allegations as true, and we construe all inferences that reasonably may be drawn from those facts in the light most favorable to the non-movant. Lee v. City of Chicago, 330 F.3d 456, 459 (7th Cir. 2003); Szumny v. Am. Gen. Fin., 246 F.3d 1065, 1067 (7th Cir. 2001).

We agree with Plaintiffs that the sufficiency of their complaint is not subject to review at this stage of the proceedings based on more demanding summary judgment standards. However, when reviewed even in that more permissive light, Plaintiffs claims brought pursuant to the Indiana Constitution and Section 1981 of Title 42, USCA, do not survive. They simply lack the factual underpinnings sufficient to show any plausible entitlement to relief. See Fed. R. Civ. P. 8(a).

**C. Claims Under the Indianapolis Code**

Finally, the City seeks dismissal of the claims brought by Plaintiffs pursuant to Indianapolis Code § 581-103 and § 581-403 arguing that they should have been raised as part of Lawsuit I as the failure to include them bars them from belated assertion under the doctrine of *res judicata*. Further, says the City, Plaintiffs' "two-page argument in response to Defendant's position is wholly unsupported by any case law or statutory authority" and should therefore be disregarded by the Court. Def's Reply Mot. Dismiss at 11. Plaintiffs rejoin that the Court is obligated to take into account public policy considerations underlying a case such as this and infer from the filing of the EEOC

16

complaint that their complaint embraced all these issues. This is a grasping at straws by Plaintiffs in an effort to salvage their faltering claims. These claims, to the extent that they have any legal viability and to the extent that we accurately comprehend what Plaintiffs intended in advancing them, clearly relate to the substance of Lawsuit I and therefore were fully adjudicated as part of that action and were incorporated into the final judgment.

## CONCLUSION

For the reasons set forth above, we hold that Plaintiffs' complaint is barred. Plaintiffs' various claims—under the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution, 42 U.S.C. §§ 2000e, *et. seq.* ("Title VII"), 42 U.S.C. § 1983, 42 U.S.C. § 1981, and the Indiana Constitution—are barred by *res judicata* and collateral estoppel, therefore Plaintiffs have failed to state a claim upon which relief must be granted pursuant to Fed. R. Civ. Pro. 12(b)(6). Accordingly, Defendant's Partial Motion to Dismiss on the basis of is <u>GRANTED</u>, reserving for subsequent resolution Plaintiff Green's claim of retaliation.

IT IS SO ORDERED.

Date: 09/30/2013

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Gregory P. Gadson
LEE FAIRMAN LLP
ggadson@nleelaw.com

Jamison J. Allen
LEE COSSELL KUEHN CROWLEY & TURNER LLP
jallen@nleelaw.com

Nathaniel Lee
LEE FAIRMAN LLP
nlee@nleelaw.com

Alexander Phillip Will
OFFICE OF CORPORATION COUNSEL
CITY OF INDIANAPOLIS
awill@indygov.org

Beth Ann Garrison
CITY OF INDIANAPOLIS
CORPORATION COUNSEL
beth.garrison@indy.gov